VAN WINKLE AND POTTER *v.* HENRY D. SMITH et al.

Where A. succeeds, by fraudulent means, in getting possession of the property of B., he (A.) will be held liable to the creditors of B. for the money he has received from the property and converted to his own use, upon the same principle that he would be liable as executor *de son tort* of B.'s estate.

In such a case, all the means and property derived by A. from such a fraudulent transaction, will be liable to the prior creditors of B.

In error from the southern district chancery court at Natchez; Hon. James M. Smiley, vice-chancellor.

Van Winkle and Potter *v.* Smith et al.

The opinion of the court contains a sufficient statement of the facts of the case.

*George L. Potter* for appellants.

Fraud and damages coupled will entitle the injured party to relief in cases of this kind. 7 Johns. Ch. R. 200.

A party is liable in equity for all damages caused by his false assertions and fraudulent acts. A decree should, then, be rendered against the defendant for the debt which has been lost by his fraud. 7 Johns. Ch. R. 202, &c.; *Riggs* v. *Murray*, 2 Ib. 582; *Jones* v. *Henry*, 3 Litt. 428.

A fraudulent vendee is regarded as a trustee for the creditors of the vendor, and he should be compelled to surrender the property, or account for its value to the creditors of the vendor. *Hubbert* v. *Grant*, 4 Monr. 185; *Hadden* v. *Spaden*, 20 Johns. Ch. 554; 1 Story, Eq. § 439; 2 Ib. § 1255, &c.

*Carnot Posey* for appellees.

Mr. Justice HANDY delivered the opinion of the court.

The plaintiffs in error filed their bill in the southern district chancery court at Natchez, stating that they had recovered a judgment at law against one Susan D. Gibson, for the sum of $1,489.72, upon which execution was issued, and returned *nulla bona;* that she then owned a tract of land in Wilkinson county, seven slaves and other personal property; that the land was under mortgage for the purchase-money, amounting to $2,300, executed before the date of the judgment; that the mortgage debt was afterwards transferred to one Lanehart; that before the rendition of the judgment, Susan D. Gibson conveyed seven slaves to one Therrell, in trust to secure a debt of about $450 due to one Currier; that Mrs. Gibson, after the recovery of the plaintiff's judgment, combined with the defendant, Henry D. Smith, to secrete and fraudulently arrange her property and remove it beyond the reach of the judgment; that one of the slaves embraced in the trust deed to Therrell was sold, and that claim was satisfied, and in furtherance of a previous fraudulent combination between Mrs. Gibson and said Smith, the

residue of the slaves of Mrs. Gibson were shortly afterwards run off by Smith, and sold in Louisiana; that shortly afterwards, Smith purchased the mortgage notes with the proceeds of sale of the slaves, and acquired by fraudulent purchase all her estate; that afterwards, about the 5th of February, 1846, and when Mrs. Gibson was in her last illness, by the fraudulent procurement of Smith, she made a conveyance to him, in secret trust for her children, of her land, and after her death, which took place shortly after this, he took possession of the property, and with her property and the slaves of her minor children, made a crop which he sold for $800, and in October, 1846, sold the tract of land to the defendant David Hubbard, who purchased in good faith for the sum of $1,500, paid the sum of $825, and gave his note for $675, the greater part of which is unpaid; that Smith fraudulently and pretendedly transferred that note to his brother, O. E. Smith, when it really belongs to him; that Smith purchased, with the money derived from the sale of Mrs. Gibson's slaves, other slaves from the defendant F. C. Ford, with which latter slaves, in part, he purchased said land sold to Hubbard, and with other of said means, he purchased a tract of land which he leased for five years at fifty dollars per annum to the defendant A. C. Holt, for which Smith holds the notes of Holt, except one which is probably paid; that Mrs. Gibson died intestate, leaving several children who are made defendants, and that no administration has been taken out on her estate; that Smith, at the time of his fraudulent combination and pretended purchase of Mrs. Gibson's property, was a country school teacher without means, and is endeavoring to convert the avails of his fraudulent transactions into money, and leave this State.

The object of the bill is to have the money due from Hubbard and Holt applied to the complainants' judgment, and the land held in Smith's name and obtained by his fraudulent conversion of Mrs. Gibson's property, sold for the payment of the judgment, and that said money and land be declared as liable to the payment of the complainants' judgment.

The defendant Henry D. Smith denies the fraud and combination, and claims to be a *bonâ fide* purchaser. He admits in substance that it was arranged between him and Mrs. Gibson,

that one of the slaves should be sold to pay the debt secured by the trust deed, and that the others should be taken off by him and sold, but denies that it was done fraudulently. He denies that he is without means and an itinerant school teacher. He claims to have had possession of the land and other property of Mrs. Gibson long before her death, and that she and her family resided there by his permission. He admits the sale of the land to Hubbard, and that he leased the land to Holt and took his notes as stated in the bill, but denies that he purchased the land leased to Holt by means of the property of Mrs. Gibson.

O. E. Smith denies all knowledge of the greater part of the matters stated in the bill, but claims to be a *bonâ fide* holder of the note of Hubbard for full value paid.

The evidence in this case is very voluminous, and contains many minute particulars relative to the frauds charged against the defendants Henry D. Smith and O. E. Smith. Without examining the details of this testimony here, it is sufficient to say, that the fraudulent conduct alleged in the bill is substantially established, showing that the defendants, H. D. Smith and O. E. Smith, were without means to purchase the property, that it was a fraudulent contrivance on the part of H. D. Smith, in getting possession and control of the slaves of Mrs. Gibson, (except the slave Frank, who is proved to have been purchased with his means,) and that the notes of Hubbard and Holt, and the lands leased to Holt, and the money derived from the sale of the growing crop of Mrs. Gibson, are the result of these fraudulent arrangements.

Under these circumstances, H. D. Smith is liable to the creditors of Mrs. Gibson for the money received by him from the property, and which he has converted to his own use, upon the same principle that he would be liable as executor *de son tort* of Mrs. Gibson. But the extent of his liability is a question of more difficulty.

It appears, that of the six slaves run off and sold by H. D. Smith, Mrs. Gibson was the absolute owner of only two, Hannah and Ellen, and that she had but a life-estate in Stephen, Jenny, Edmund, and Rachel, with remainder to her children. Under the view we take of Smith's fraudulent conduct, it is

clear that he is liable for the value of the absolute property of Mrs. Gibson, which he fraudulently converted to his use.   This embraces the two slaves Hannah and Ellen, and the growing crop, which he is proved to have sold for $800.   To the amount of the value of this property, he is liable to a personal decree in favor of the complainants.   Should he be held liable also for the avails of the sale of the slaves in which Mrs. Gibson had but a life-estate, and through which he obtained the notes of Hubbard and Holt, and the lands leased to Holt?   And should these funds and property be held subject to the complainants' judgment?

It does not appear for what sum Smith sold the slaves.   If the sale had been *bonâ fide*, he could have conveyed only the life-estate of Mrs. Gibson in the four negroes named.   It is not for him to say that he conveyed a greater interest than Mrs. Gibson had, and that he committed a fraud upon her children. He claims to have purchased her interest and to have sold the same ; and whatever that interest was, he is responsible to the extent of the avails of the sale received or realized by him.   It is shown by the testimony, that with the product of that sale he acquired the notes and property mentioned in the bill.   If he sold a greater interest than Mrs. Gibson had in the slaves, which is not pretended by him, it only tends to render his conduct the more unjustifiable.   From the position in which he stands, it must be presumed either that he sold the absolute title to the slaves, or that he sold her life-estate at a high valua-ation.   Taking the latter as the most favorable to him, he would be liable for the avails as so much money obtained by a fraudulent combination between him and Mrs. Gibson.   He is not to be permitted to enjoy the fruits of his fraudulent conduct, and to appropriate, by indirect and tortious means, the property and effects of Mrs. Gibson to his own use, against the claim of her creditors.   We are, therefore, of opinion, that all the means and property derived from these fraudulent transactions, are liable to the judgment of the plaintiffs in error, including the money due on the notes of Holt and Hubbard.   This latter note is claimed by O. E. Smith, the brother of H. D. Smith, as a holder for value without notice.   We think that the circum-

stances of the case, as proved, involve him in the fraudulent conduct of H. D. Smith, and that he cannot enjoy the benefit of the note as a *bonâ fide* purchaser, and that the money due upon it is liable to the judgment of the plaintiffs in error.

Let the decree of the district chancery court be reversed, and the cause remanded, to be proceeded with in the court below, in conformity with the views herein declared.